UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
NATIFAH COOPER,

                              Plaintiff,

                - against -

Police Officer PAUL DIEUGENIA, Shield No.
13223, Police Officer ALEKSANDR
PASYNKOV, Tax Id. 947328 and JANE DOE
1 through 10, individually and in their official
capacities (the names John and Jane Doe being
fictitious, as the true names are presently
unknown),

                              Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
14-CV-6136 (PKC)

PAMELA K. CHEN, United States District Judge:

  Plaintiff Natifah Cooper brought this action pursuant to 42 U.S.C. § 1983 against

Defendant Police Officers Paul Dieugenia ("Dieugenia") and Aleksandr Pasynkov ("Pasynkov")

and unidentified "Jane Doe Officers 1–10", based on events relating to her arrest on April 17,

2013. In her Amended Complaint, Plaintiff asserted six causes of action: (1) unlawful stop and

search; (2) false arrest; (3) excessive force; (4) denial of the right to a fair trial; (5) First

Amendment retaliation; and (6) failure to intervene. (Dkt. 12, ("AC") ¶¶ 36–57.) As discussed

*infra*, since filing this action, Plaintiff has withdrawn a number of her claims as to various

Defendants. Before the Court is Defendants' motion for partial summary judgment seeking

dismissal of all remaining claims, except Plaintiff's claim of excessive force against Dieugenia.

(Dkt. 36, ("Defs. Mem.").) For the reasons discussed below, Defendants' motion is GRANTED

in part and DENIED in part.

# BACKGROUND

## I. CLAIMS REMAINING IN THIS ACTION

In her Amended Complaint, Plaintiff blanketly asserted all six causes of action against all of the Defendants. In rather helter-skelter fashion, Plaintiff thereafter voluntarily withdrew various claims against some of the Defendants. At the pre-motion conference on April 26, 2016, Plaintiff withdrew all of her claims against the Doe defendants and her first cause of action for unlawful stop and search against all Defendants. (*See* 4/26/2016 Minute Entry and Transcript.) On May 4, 2016, Plaintiff withdrew her false arrest, excessive force, and denial of the right to a fair trial claims against Pasynkov. (*See* Dkt. 31.) And now, in response to Defendant's motion, Plaintiff withdraws her First Amendment retaliation claim against all Defendants. (*See* Dkt. 39, ("Pl. Opp.") at 7.)[1] Thus, the remaining claims in this action are: First Cause of Action – unlawful stop and search against both Defendants; Second Cause of Action – false arrest against Dieugenia; Third Cause of Action – use of excessive force against Dieugenia; Fourth Cause of Action – denial of the right to a fair trial against Dieugenia; and Sixth Cause of Action – failure to intervene against Pasynkov. Defendants seek to dismiss all but the excessive force claim as to Dieugenia. (Defs. Mem.)

## II. FACTS

On the night of April 17, 2013, Plaintiff was arrested, as was her boyfriend, Alexander Kosterkin ("Kosterkin"), by Defendants, both of whom are New York City Police Department

---

[1] Notably, despite Plaintiff having indicated at the April 26, 2016 conference that she was withdrawing the first cause of action of unlawful stop and search as to all Defendants, both parties have briefed that claim in their respective summary judgment submissions. (*See* Defs. Mem. at 4; Pl. Opp. at 3.) The Court therefore considers Plaintiff's unlawful stop and search claim as not having been withdrawn.

officers.  (Dkt. 35, ("Defs. 56.1") ¶¶ 1, 7; Dkt. 40, ("Pl. 56.1 Counter-Statement") ¶¶ II.2, 9.)[2]

Earlier that night, Plaintiff had left her house with her dog to meet Kosterkin near his home on

Bayview Avenue in Brooklyn.  (Defs. 56.1 ¶ 2.)  As Plaintiff and Kosterkin were walking the

dog on a plot of grass across from Kosterkin's home, they encountered a man who appeared to

be homeless and whose name remains unknown.  (Dkt. 42-1, Ex. 2, ("Pl. Cooper") at 37:3–

38:10.)[3]  The man was sitting alone near a small fire.  (*Id.* at 38:6–10.)  The man asked Kosterkin

if he had a can opener and asked for help opening a can of food.  (*Id.* at 37:18–38:2.)  Kosterkin

did not have a can opener, but instead offered his small work knife to the man.  (*Id.* at 37:23–

38:2.)  After Plaintiff and Kosterkin had been with the man, trying to open the can, for about five

minutes, two police officers—Dieugenia and Pasynkov—approached them.  (*Id.* at 39:9–17.)

Defendants placed Kosterkin in handcuffs and arrested him.  (*Id.* at 46:15–24; Pl. 56.1 Counter-

Statement ¶ II.2.)  The parties disagree as to whether Kosterkin's knife was in his sweatshirt

pocket or clipped to his pants pocket, such that it was visible to the officers.  (*See* Pl. Cooper at

47:11–21; Dkt. 34-3, Ex. C, ("Pasynkov") 26:4–7.)[4]

---

[2] Unless otherwise noted, a standalone citation to a 56.1 Statement denotes that the Court has deemed the underlying factual allegation undisputed.  Any citations to a party's 56.1 Statement incorporates by reference the documents cited therein.  Where relevant, however, the Court may cite directly to the underlying document.

[3] The parties each have submitted excerpts from Plaintiff's deposition.  Generally, the Court cites to Defendants' submission, except where it does not contain the relevant portions of the deposition, in which instances the Court cites to Plaintiff's submission.  (*See* Dkt. 42-1, Ex. 2, ("Pl. Cooper"); Dkt. 34-2, Ex. B, ("Cooper") at 37:3–38:10.)

[4] In support of the assertion that Kosterkin's knife was visible to the officers, Defendants cite to page 46 of their Exhibit B, which contains excerpts from Plaintiff's deposition.  However, page 46 is not among those excerpts.  (*See* Cooper.)  Furthermore, when the Court examined Plaintiff's submission of excerpts from her deposition, which does include page 46, nothing on that page indicates that the officers observed Kosterkin with a knife.  (*See* Pl. Cooper at 46.)  Although Defendants fail to cite (in their 56.1 Statement) to the correct portion of the their depositions, the record indicates that Pasynkov testified that Kosterkin had the knife clipped onto

The parties disagree about most of what transpired from this point on. Defendants allege that Plaintiff blocked Pasynkov's path as he attempted to walk Kosterkin to the police vehicle. (Dkt. 34-4, Ex. D, ("Dieugenia") at 26:19–27:4.) Plaintiff denies blocking Pasynkov's path at any point; rather, she says she was standing behind Pasynkov, leaving him a clear path to the police car. (Cooper at 60:4–22.)

Defendants allege that, as Pasynkov handed Kosterkin's cell phone to Dieugenia for safekeeping, Plaintiff pushed Dieugenia. (Dieugenia at 36:11–37:4.) Plaintiff denies this. (Cooper at 59:13–15.) Plaintiff alleges that Kosterkin had asked the officers whether he could give Plaintiff his phone and that Pasynkov had said yes. (*Id.* at 53:6–9.) Plaintiff then took the dog to Kosterkin's house and came back to pick up Kosterkin's phone. (Pl. Cooper at 54:4–13.) Plaintiff alleges that when she returned, she bent down to pick up Kosterkin's phone, which was on the ground, and that Dieugenia pushed her when she had her back turned to him. (*Id.* at 54:14–23; 55:8–15.) According to Plaintiff, she was startled and asked Dieugenia why he had pushed her, at which point he grabbed her arm, punched her in the face with a closed fist, and threw her to the ground. (*Id.* at 55:8–23; 57:4–20.) He then pushed her face into the dirt, put his knee into her back, and told her to "stop resisting." (*Id.* at 57:21–25.) Plaintiff denies resisting and alleges that she tried to tell the officer that he was hurting her. (*Id.* at 57:22–58:3.) At this point, Kosterkin's mother, who had arrived at the scene, told Dieugenia that Cooper has asthma, to which Dieugenia replied, "They all do." (*Id.* at 58:4–6.)

Dieugenia then patted down Plaintiff's pockets and searched her while she was on the ground with her face in the dirt. (*Id.* at 58:10–16.) Female officers later came and conducted a thorough search of Plaintiff. (*Id.* at 58:17–19.) Plaintiff was arrested, taken to Central Booking,

---

his pants pocket with the knife on the outside. (*See* Pasynkov 26:4–7.) In any event, this issue is irrelevant to the Court's resolution of Defendant's motion.

and charged with various misdemeanors. (AC ¶¶ 32–33.) She eventually received an adjournment in contemplation of dismissal ("ACD") after multiple court appearances. (*Id.* ¶ 34.)

## DISCUSSION

## I. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *Summa v. Hofstra Univ.*, 708 F.3d 115, 123 (2d Cir. 2013) (quoting *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001)); *see also* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "Material" facts are facts that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The moving party bears the burden of establishing the absence of any genuine issue of material fact." *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 322). Once a defendant has met his initial burden, the plaintiff must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 323–24 (internal quotation marks omitted). In determining whether there are genuine disputes of material fact, the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (internal quotation marks omitted).

The Court's inquiry upon summary judgment is "determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250; *see also id.* at 251–52 ("In essence, though, the inquiry . . . [is] whether the evidence presents a sufficient disagreement to require submission to a jury or

5

whether it is so one-sided that one party must prevail as a matter of law."). In other words, "[s]ummary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (alterations in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II.    PLAINTIFF'S CLAIMS

Plaintiff has brought this action pursuant to 42 U.S.C. § 1983, which provides a cause of action for anyone subjected "to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)); *see Bailey v. City of New York*, 79 F. Supp. 3d 424, 440 (E.D.N.Y. 2015). To state a claim under Section 1983, "a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999); *see Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Toledo*, 446 US. 635, 640 (1980)).

## A.    False Arrest[5]

Defendants argue that Plaintiff's false arrest claim must be dismissed because there was probable cause for her arrest.  In the alternative, Defendants assert that they are entitled to qualified immunity as to this claim.  As explained below, the Court rejects both of these contentions.

"In analyzing § 1983 claims for unconstitutional false arrest, [courts] generally look[] to the law of the state in which the arrest occurred." *Dancy v. McGinley*, 843 F.3d 93, 107 (2d Cir. 2016) (quoting *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006)).  Under New York law, to prevail on a false arrest claim, a plaintiff must show, *inter alia*, that Defendants[6] intentionally arrested her without justification.  *Dancy*, 843 F.3d at 107 (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) and *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012)).  The existence of probable cause to arrest "is a complete defense to an action for false arrest." *Weyant*, 101 F.3d at 852 (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)); *see also Dancy*, 843 F.3d at 107 (citing *Jaegly*, 439 F.3d at 152).  An officer has probable cause to arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested *has committed* or *is committing a crime*." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013) (emphasis in original) (quoting *Weyant*, 101 F.3d at 852).  "Therefore,

---

[5] Because the stop and search of Plaintiff was incident to her arrest (*see* Pl. Cooper 55: 8–23, 58:10–20), Plaintiff's false arrest and unlawful stop and search claims, in effect, will be decided by the same probable cause analysis.  If there was probable cause to arrest Plaintiff, then there was probable cause to stop and search her incident to that arrest.  The Court therefore first addresses Defendant's motion with respect to Plaintiff's false arrest claim.

[6] Plaintiff asserts a claim of false arrest only against Dieugenia and a claim of unlawful stop and search against both Defendants.  However, because both Defendants argue that there was probable cause for the arrest and the stop and search, the Court will refer to both Defendants in discussing issues relevant to the existence or non-existence of probable cause.

'[w]hether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law.'" *Dancy*, 843 F.3d at 107 (alteration in original) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)).

Defendants present various theories for finding probable cause for Plaintiff's arrest: (1) she, along with her boyfriend and the other man, were standing around a bonfire in violation of the New York City Department of Parks and Recreation Regulation ("Parks Department Rule"), 56 R.C.N.Y. § 1–05(m); (2) she was in a City park after dark in violation of another Parks Department Rule, 56 R.C.N.Y. § 1–03(a)(1); (3) her behavior constituted disorderly conduct in violation of New York Penal Law § 240.20; and (4) she physically attempted to block the walkway when Pasynkov walked her boyfriend to the police vehicle, thus obstructing governmental administration ("OGA") and resisting an arrest in violation of New York Penal Law Sections 195.05 and 205.30, respectively. (*See* Defs. Mem. at 4–8.)

1.    Bonfire Violation

Defendants assert that probable cause existed to arrest Plaintiff for violating a Parks Department Rule because she was "standing around a bonfire" with others in the park. (Defs. Mem. at 5.) Section 1–05(m) of the Parks Department Rule states, in relevant part, that "no person shall kindle, build, maintain, or use a fire in any place, portable receptacle, or grill except in places provided by the [Parks] Department and so designated by sign or by special permit. In no event shall open or ground camp fires be allowed in any park." However, Plaintiff denies using or having anything to do with the bonfire, and claims that she and her boyfriend were merely helping the other man open his can of food. (Pl. Cooper at 37:18–38:10, 39:9–12.) Notably, Defendants do not discuss, or point to any evidence regarding, where Plaintiff was in relation to the bonfire or how far from it she was at the time Defendants approached her. (*See* Defs. Mem.) They do not assert or offer evidence that Plaintiff was doing anything other than

standing in the vicinity of the bonfire. In light of such factual gaps and the parties' disagreement as to Plaintiff's "use" of the bonfire, the Court cannot find, as a matter of law, that there was probable cause to arrest Plaintiff for violating Section 1–05(m) of the Parks Department Rule.

## 2. Being in the Park After Closing Time

Defendants also assert that there was probable cause for Plaintiff's arrest because she was in a New York City park, after dark, in violation of 56 R.C.N.Y. § 1–03(a)(1), which states, "Persons may enter and use the parks from 6:00 a.m. until 1:00 a.m. unless other open hours are posted at [the] park." (Defs. Mem. at 6.) However, the parties dispute whether there was a properly posted sign that shortened the park's hours. Plaintiff and Kosterkin claim that "there was no sign forbidding access to the beach area after dusk, or any other prohibition." (Pl. Opp. at 5.) Meanwhile, Defendants offer a Google Maps image purportedly showing a sign posted at the entrance to the park where Plaintiff was arrested. (Dkt. 34-5, Ex. E). Defendants represent that the sign indicated that the park closed at dusk, and ask the Court to take judicial notice, based on this image, that the park closed at dusk on the day of Plaintiff's arrest. (Defs. Mem. at 6.) Even assuming *arguendo* the propriety of the Court taking judicial notice of the Google Maps image, that image fails to prove anything. First, the image does not clearly show what the sign says.[7] Second, even if the sign could be read clearly from the image, the image was not taken on the day of Plaintiff's arrest. As Defendants admit, the image was taken and posted on Google Maps in January 2013, three months *before* Plaintiff's arrest (*id.*; Ex. E). The image therefore fails to prove, even by a preponderance, that the sign was posted at the park the night of Plaintiff's arrest or that the sign, even if it was there, was visible to Plaintiff or the officers, or in

---

[7] The image shows a fence with two signs. The sign on the right clearly states "No Dumping." The sign on the left, however, cannot be clearly read. (*See* Dkt. 34-5, Ex. E.)

legible condition.[8]  Thus, there remain disputed issues of material fact with respect to whether Defendants had probable cause to arrest Plaintiff for being in the park after hours, in violation of Parks Department Rule § 1–03(a)(1).

### 3. Disorderly Conduct, OGA, and Resisting Arrest

Defendants also assert that Plaintiff's hostile and unruly behavior gave them probable cause to arrest her.  (Defs. Mem. at 7–8.)  However, Defendants' argument is based entirely on their version of how Plaintiff allegedly behaved, and completely disregards her contrary version of events.  This is a classic he-said-she-said dispute that is inappropriate for resolution by summary judgment because there is no unimpeachable evidence to break the tie.  "The question of whether or not probable cause existed may be determinable as a matter of law *if there is no dispute as to the pertinent events* and the knowledge of the officers[.]"  *Weyant*, 101 F.3d at 852 (emphasis added).  When the issue of probable cause is "predominantly factual in nature," it is appropriate for the jury to decide.  *Barksdale v. Colavita*, 506 F. App'x. 82, 84 (2d Cir. 2012) (citation and internal quotation marks omitted); *see also Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (quoting *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996))).

Here, there is a genuine issue of material fact as to every one of the illegal acts allegedly committed by Cooper.  Whereas Defendants claim that Plaintiff was screaming, cursing, flailing her arms, pushing Dieugenia, and blocking Pasynkov's path—giving rise to probable cause to

---

[8] All of these considerations demonstrate why it would be inappropriate for the Court, in any event, to take judicial notice of the Google Maps image, since there is no evidence in the record, save defense counsel's representations, as to when or how it was created.

arrest Plaintiff for OGA,[9] resisting arrest,[10] and disorderly conduct[11]—Plaintiff denies doing any of those things and claims that it was the officers who engaged in violent behavior toward her, including pushing, grabbing, and punching her, shoving her to the ground, pushing her face into the dirt, and kneeing her in the back. (*Compare* Pasynkov at 30:10–12, 32:21–22, 33:17–21; Dieugenia at 27:1–12 *with* Cooper at 60:4–22; Pl. Cooper at 54:14–23; 55:8–23; 56:4–57:20.)[12] Thus, a reasonable jury could credit Plaintiff's version of events and conclude that Defendants lacked probable cause for Plaintiff's arrest for OGA, resisting arrest, and disorderly conduct.

4.      Probable Cause to Arrest Has Not Been Shown as a Matter of Law

Viewing the facts in the light most favorable to Plaintiff, the Court finds that there remains a material factual dispute as to whether Defendants had probable cause to arrest Plaintiff. *See, e.g., Graham v. City of New York*, 928 F. Supp. 2d 610, 617 (E.D.N.Y. 2013) (denying summary judgment on plaintiff's false arrest claim, finding a genuine issue of fact

---

[9] Section 195.05 of the New York Penal Law states that "[a] person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or prevents . . . or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference . . . ." Under New York law, OGA has four elements: "(1) prevention or attempt to prevent (2) a public servant from performing (3) an official function (4) by means of intimidation, force or interference." *Cameron v. City of New York*, 598 F.3d 50, 68 (2d Cir. 2010) (citation and internal quotation marks omitted).

[10] Under New York Penal Law § 205.30, "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer . . . from effecting an authorized arrest of himself or another person."

[11] Proving disorderly conduct under New York Penal Law § 240.20 requires the prosecution to demonstrate three elements: (1) the defendant's conduct was "public" in nature; (2) the conduct was done with "intent to cause public inconvenience, annoyance or alarm" or with recklessness as to "creating a risk thereof"; and (3) the conduct fits within one of the categories listed in the statute (for example, making "unreasonable noise" or using "abusive or obscene language"). *See Provost v. City of Newburgh*, 262 F.3d 146, 157–59 (2d Cir. 2001).

[12] Plaintiff also testified that she had worked with police officers in the past through community work and that she was trying to treat them with respect and to be cognizant of their need to enforce the law. (Pl. Cooper at 55:24–56:20.)

regarding whether plaintiff obstructed government administration and finding it was appropriate for the jury to decide which party's version of the facts should be credited); *Milfort v. Prevete*, 922 F. Supp. 2d 398, 406 (E.D.N.Y. 2013) (denying summary judgment as to plaintiff's false arrest claim when the parties disagreed about whether plaintiff raised his voice or complied with a police officer's directive); *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 598 (S.D.N.Y. 2013) ("Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment." (quoting *United States v. Rem*, 38 F.3d 634, 643–44 (2d Cir. 1994))). Thus, Plaintiff's false arrest claim must proceed to trial unless Defendants can show that they are entitled to qualified immunity.

5.  Qualified Immunity[13]

Qualified immunity protects government officials from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996) (citations omitted); *see also Barboza v. D'Agata*, ---Fed. Appx. --- 2017 WL 214563, at *2 (2d Cir. Jan. 18, 2017) (noting that courts are to conduct a two-step analysis: "First, do the facts show that the officer's conduct violated plaintiff's constitutional

---

[13] Although Defendants only argue for qualified immunity with respect to the false arrest claim, the Court's resolution of that issue also applies to Plaintiff's unlawful stop and search claim, given that the stop and search were incident to Plaintiff's arrest. (*See* Pl. Opp. at 3; *see also* Pl. Cooper at 58:10–16.) In other words, Defendants are either entitled to qualified immunity as to both claims or neither claim.

rights?  Second, if there was a constitutional violation, was the right clearly established at the time of the officer's actions?").

In the context of false arrest, even in the absence of probable cause, "an arresting officer [is] entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004); *see also Harlow*, 457 U.S. at 812 (noting that a defendant bears the burden of proving the affirmative defense of qualified immunity).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Escalera*, 361 F.3d at 743 (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).  "The test is not toothless, however: 'If officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause, the fact that it came close does not immunize the officer.'"  *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (quoting *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007)); *see also Jenkins*, 478 F.3d at 87 ("'Arguable' probable cause should not be misunderstood to mean 'almost' probable cause.").

Defendants assert that they are entitled to qualified immunity because (1) Plaintiff's constitutional rights were not violated and (2) even if there was no probable cause for Plaintiff's arrest, there was "arguable probable cause."  (Defs. Mem. at 12–13.)  The Court has already found that Plaintiff has presented sufficient facts from which a reasonable jury could find that Defendants are liable for false arrest in violation of a well-established right not to be arrested in the absence of probable cause, *see Weyant*, 101 F.3d at 852.  Therefore, the issue is whether there was arguable probable cause for Plaintiff's arrest.  Defendants assert that they had arguable

probable cause because Plaintiff "admitted" that she was in front of a bonfire on the beach after dusk. (Dkt. 38 ("Defs. Reply") at 3.) The Court finds that this purported admission is insufficient to establish arguable probable cause.

The question of whether it was objectively reasonable for an officer to believe his conduct did not violate a clearly established right "has its principal focus on the particular facts of the case." *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004) (quoting *Hurlman v. Rice*, 927 F.2d 74, 78–79 (2d Cir. 1991)). Here, Defendants simply point to the fact that Plaintiff failed to deny in her 56.1 Counter-Statement that she was "in front of the bonfire on the beach after dusk." (Defs. Reply at 3.) Even assuming Plaintiff admits to being "in front of the bonfire," this fact, by itself, does not make it objectively reasonable for Defendants to have believed that Plaintiff was violating the Parks Department Rule against bonfires. The rule does not outlaw merely standing in front of a bonfire; it prohibits kindling, building, maintaining, or using a fire or having an open or ground campfire. 56 R.C.N.Y. § 1–05(m). Without more factual evidence in the record as to the information known to the Defendants at the time of the arrest—for example, Plaintiff's proximity to the bonfire, what she was doing at the time the Defendants saw her, whether she was facing toward or away from the bonfire, or whether she appeared to be part of a group gathered around and using the bonfire—the Court cannot find that it was objectively reasonable for Defendants to believe that they had probable cause to arrest Plaintiff for violating Section 1-05(m).[14] *See Jurkowitsch v. Choudhury*, --- Fed. Appx. --- , 2016 WL 7177479, at *2 (2d Cir. Dec. 8, 2016) (finding qualified immunity could not be found at motion to dismiss stage where defendant officers allegedly arrested plaintiff based upon

_____

[14] "While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting summary judgment motion, it is not required to consider what the parties fail to point out." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000) (citation omitted) (internal quotation marks omitted).

employee's false 911 report of trespass and possible burglary and where there was no description of 911 caller's statements or of circumstances that might have indicated caller's veracity or basis for knowledge).

Likewise, given the parties' disputes over key facts and the absence of other material information, the Court cannot determine, as a matter of law, whether "officers of reasonable competence could disagree on whether the probable cause test was met." *See Escalera*, 361 F.3d at 743 (citation and internal quotation marks omitted). As discussed, Plaintiff asserts that she was not using the bonfire, and Defendants only claim that they observed Plaintiff near the bonfire. (*See* Defs. 56.1 ¶ 4; Pl. 56.1 Counter-Statement ¶ I.4.) Furthermore, the record indicates that Plaintiff was standing near the bonfire with one man (Kosterkin) and that another man, who appeared to be homeless, was actually sitting by the bonfire. (*See* Pl. Cooper at 37:18–23, 38:6–10; Dieugenia at 19:23–24.) Based on these scant facts, the Court concludes that "officers of reasonable competence would have to agree that the information possessed by [the Defendants] at the time of [Plaintiff's] arrest did not add up to probable cause" to believe that Plaintiff had any role in building, maintaining, or using the bonfire. *See Jenkins*, 478 F.3d at 87.[15] Indeed, the record indicates that Defendants themselves did not arrest Plaintiff at the moment they saw her "standing in front of the bonfire." (Pl. Cooper at 53:10–12.) Instead, she

_____

[15] Defendants argue that "once a police officer has a reasonable basis to believe there is probable cause to arrest, the officer is not required to explore or eliminate every theoretically plausible claim of innocence before making an arrest," relying on *Panetta v. Crowley*, 460 F.3d 388, 398 (2d Cir. 2006). *Panetta*, however, is inapposite. In *Panetta*, the Second Circuit found that because the defendant officer had probable cause to arrest the plaintiff, he was not required to further investigate the matter or pursue leads on potentially exculpatory information. *Id.* at 398-99. Here, the Court has ruled that Defendants have failed to demonstrate, based on the undisputed facts, that probable cause existed to arrest Plaintiff or that arguable probable cause existed for that arrest. In making those determinations, the Court has not considered, in any way, whether Defendants could or should have conducted additional investigation before arresting Plaintiff.

was free to leave the scene to drop off her dog at Kosterkin's home. (*Id.*) The fact that Defendants did not immediately arrest Plaintiff suggests that Defendants themselves did not believe that Plaintiff was violating the bonfire regulation and thus undercuts Defendants' contention that reasonably competent officers could disagree about whether there was probable cause to arrest Plaintiff for this violation.

Defendants also argue that there is arguable probable cause to arrest Plaintiff for violating Parks Department Rule § 1–03(a)(1), which prohibits being in a City park after hours. (Defs. Reply at 3.) Again, Defendants have failed to demonstrate that it was objectively reasonable for them to believe that Plaintiff was in the park after the applicable closing time. As discussed, there is a factual dispute as to whether the park's hours had been changed from 1:00 a.m. to dusk, based on posted signage, and thus whether it was illegal for Plaintiff to be in the park after dusk. (*Compare* Defs. Mem. at 6 *with* Pl. Opp. at 4–5.) Moreover, Defendants do not even claim that they knew about any signage or otherwise believed that the park closed at dusk (*see* Defs. Mem.; Defs. Reply). *See Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2008) ("A Court must evaluate the objective reasonableness of the [officer's] conduct 'in light of . . . the information the . . . officers possessed.'" (citation and internal quotation marks omitted)). In the absence of such material information, the Court cannot determine the objective reasonableness of Plaintiff's arrest for alleged violation of Section 1–03(a)(1). *See Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001) ("[S]ummary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." (quoting *Thomas*, 165 F.3d at 143; *see also Zellner*, 494 F.3d at 368 (finding that when material facts pertaining to immunity are in dispute, the appropriate procedure is to allow the jury to resolve any disputed facts material to the qualified immunity issue, so that the

court can make the "ultimate determination of whether the officer's conduct was objectively reasonable" (citations omitted)).

Thus, the Court cannot determine at this time whether Defendants are entitled to qualified immunity with respect to Plaintiff's false arrest claim, and summary judgment on this claim is denied. *See Curry v. Syracuse*, 316 F.3d 324, 337 (2d Cir. 2003) (denying summary judgment because the defendant had "not established that no genuine issue of material fact exists as to whether he reasonably believed that he had probable cause to arrest [the plaintiff] for a crime").

### B.  Unlawful Stop and Search

The parties agree that Plaintiff was detained and searched "incident to," *i.e.*, simultaneous with or after, Plaintiff's arrest.  (Defs. Mem. at 4; Pl. Opp. at 3; *see also* Pl. Cooper at 58:10–19 (Plaintiff was searched first by Dieugenia and later by female officers).) [16]  Therefore, as previously discussed, the parties' arguments regarding the legality of the stop and search rise or fall with the probable cause determination relating to Plaintiff's false arrest claim. (*Supra* at n. 5.)  Because there are disputed issues of material fact as to the existence of probable cause for Plaintiff's arrest, there are also genuine issues of material fact as to the propriety of the stop and search to which Plaintiff was thereafter subjected.  *See e.g. Bryant v. Serebrenik*, No. 15–CV–3762, 2016 WL 6426372, at *2 n.2, 3 (E.D.N.Y. Oct. 28, 2016) (denying summary judgment on both plaintiffs' false arrest and unlawful stop and search claim because defendants failed to show that undisputed facts established probable cause to arrest, and plaintiffs were stopped and searched after, and incident to, their arrests).  Similarly, the Court cannot determine, at this stage, whether qualified immunity should be granted as to Plaintiff's false arrest claim, and thus cannot do so with respect to Plaintiff's unlawful stop and search claim.  Nonetheless, because there is no

---

[16] Furthermore, there is nothing in the record to suggest that events occurring after Plaintiff's arrest provided independent probable cause to stop or search her.

evidence that Pasynkov participated in the stop and search of Plaintiff, the Court must dismiss that claim as to him.

Accordingly, the Court denies Defendants summary judgment on Plaintiff's unlawful stop and search claim as to Dieugenia, but grants it as to Pasynkov.

### C.     Failure to Intervene

Defendants assert that, based on the undisputed facts, Plaintiff's failure to intervene claims against both Defendants should be dismissed.  The Court agrees as to Dieugenia, but not Pasynokov.

"It is widely recognized that law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).   "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official."  *Anderson*, 17 F.3d at 557 (citations omitted); *see also Mendoza v. County of Nassau*, No. 11–CV–02487, 2012 WL 4490539, at *11 (E.D.N.Y. Sept. 27, 2012) (stating that failure to intervene applies to claims that a plaintiff was falsely arrested).   To establish a claim for failure to intervene, a plaintiff must show that (1) the officer's failure "permitted fellow officers to violate [the plaintiff's] clearly established statutory or constitutional rights," and (2) it was "objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights."  *Ricciuti v. New York City. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) (citation and internal quotation marks omitted).

Defendants argue that Plaintiff's failure to intervene claim against Dieugenia must be dismissed because Plaintiff is actually relying on a theory of direct participation as to Dieugenia, *i.e.*, that he directly participated in the alleged false arrest and use of excessive force against Plaintiff. (Defs. Mem. at 8.)[17] If a defendant "may be liable under a theory of direct participation, there is no claim against [that defendant] for failure to intervene." *Chepilko v. City of New York*, No. 06–CV–5491, 2012 WL 398700, at *8 n.5 (E.D.N.Y. Feb. 6, 2012); *see also Buchy v. City of White Plains*, No. 14–CV–1806, 2015 WL 8207492, *3 (S.D.N.Y. Dec. 7, 2015) (noting that liability based on the failure to intervene is inapplicable to a law enforcement officer who was a direct participant in the allegedly excessive use of force). While Plaintiff does not specifically address Defendants' argument, she implicitly concedes that a failure to intervene claim cannot be brought against Dieugenia by discussing her claim of failure to intervene only as to Pasynkov. (Pl. Opp. at 7.)[18] Because Plaintiff fails to argue for, or justify, a failure to intervene claim either as to false arrest or excessive force against Dieugenia, it is dismissed as to him.[19]

---

[17] In support of this argument, Defendants cite to paragraph 11 of their 56.1 Statement; however, that paragraph does not exist. (*See* Defs. 56.1 at 3 (ending with paragraph 9).) Indeed, the Court notes that Defendants—more than once—cite to material that is nowhere in their submission. The Court may disregard evidence that a party fails to identify, even if it is in the record. *See Monahan*, 214 F.3d at 292.

[18] In her opposition brief, Plaintiff states, "In the event that the false arrest claim survives summary judgment, the failure to intervene claim against Pasynkov should also be allowed to proceed to trial." (Pl. Opp. at 7.)

[19] Although neither party explicitly discusses whether the failure to interview claim against Dieugenia as it relates to the alleged unlawful stop and search should be dismissed, the Court also dismisses that claim because there is evidence that it was Dieugenia who searched Plaintiff after her arrest (*see* Pl. Cooper at 58:10–16), and also because Plaintiff does not discuss the failure to intervene claim against Dieugenia in response to Defendants' general assertion that this claim should be dismissed as to Dieugenia in its entirety.

As to Pasynkov, Defendants contend that the Court must dismiss the failure to intervene claim against him because there was no violation of Plaintiff's constitutional rights and therefore no duty for Pasynkov to intervene.  (Defs. Mem. at 9.)  However, based on the Court's finding that there are genuine issues of material fact as to whether Plaintiff was falsely arrested by Dieugenia, there are necessarily questions of fact about whether Pasynkov failed to intervene with respect to that arrest.  *See Richardson v. Providence*, No. 09–CV–4647, 2012 WL 1155775, at *4 (E.D.N.Y. Apr. 6, 2012) ("Because defendants' only basis for dismissing plaintiff's claims for failure to intervene against [one defendant] is that plaintiff cannot establish a violation of any constitutional right, and this court has found that a material issue of fact exists as to whether plaintiff was unreasonably detained, the [failure to intervene] claim against [that defendant] also cannot be dismissed on this ground.").[20]  In addition, because Defendants are not seeking summary judgment as to Plaintiff's excessive force claim against Dieugenia,[21] the failure to intervene claim against Pasynkov as to that conduct will go to trial.[22]  *See O'Neill v. Krzeminski*,

_____

[20] For the reasons discussed above, this ruling applies as well to Plaintiff's claim that Pasynkov failed to intervene in the allegedly unlawful stop and search of Plaintiff incident to her arrest.

[21] Given that Plaintiff has withdrawn her claim of false arrest against Pasynkov, the Court assumes that she is alleging that Pasynkov failed to intervene in *Dieugenia's* false arrest of Plaintiff.  And though Plaintiff's complaint and summary judgment briefing fail to make clear whether she is also alleging that Pasynkov failed to intervene in the alleged use of excessive force against her—as opposed to directly participating in that conduct—the Court assumes that she is, given that her deposition testimony only describes Dieugenia using force on her.  (Pl. Cooper at 54:14-23; 55:8-23; 57:4-58:6.)

[22] Indeed, Pasynkov's own testimony indicates that he was present when Dieugenia allegedly engaged in this unlawful conduct.  (Pasynkov at 34:8–18 (noting that Pasynkov "kept [his] eyes on [Plaintiff]" as she was interacting with Dieugenia; *see also* Defs. 56.1 ¶ 9 (noting that Plaintiff, Dieugenia, and Pasynkov were in the same area).)  *See Wong v. Yoo*, 649 F. Supp. 2d 34, 61 (E.D.N.Y. 2009) (holding that where two defendant police officers were both present at the scene, a "reasonable fact-finder could . . . find that [one] defendant . . . knew that [the other defendant] was making an arrest without probable cause").

839 F.2d 9, 11 (2d Cir. 1988) (recognizing that an officer has an affirmative duty to intervene and prevent unlawful excessive force).

In sum, the Court grants summary judgment for Defendants only as to Plaintiff's failure to intervene claim against Dieugenia. The failure to intervene claim will proceed against Pasynkov on the bases of Dieugenia's alleged false arrest and stop and search of, and use of excessive force against, Plaintiff.

### D.     Denial of a Fair Trial

"When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti*, 124 F.3d at 130; *see also Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000) ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer.").

Plaintiff alleges that Dieugenia violated her constitutional right to a fair trial by creating false evidence against her and forwarding that evidence to prosecutors in the Kings County District Attorney's Office.[23]   (AC ¶¶ 46–48.)  Dieugenia seeks summary judgment as to this claim on the basis that "Plaintiff has not articulated with any particularity what evidence in this case was allegedly fabricated that would have led to her denial of a fair trial."  (Defs. Mem. at 10.)  The Court agrees.

Plaintiff does not address this issue at all in her Opposition Memorandum of Law.  (*See* Pl. Opp. at 7–8.)  Although implicit in Plaintiff's false arrest claim is the suggestion that Defendants must have relied on false information in arresting her without probable cause, there

---

[23] As previously noted, Plaintiff has withdrawn her claim of denial of a right to fair trial against Pasynkov.  (Dkt. 30, Plaintiff's letter dated May 4, 2016.)

is nothing in the record, other than the parties' differing accounts of what happened that night, that supports Plaintiff's claim that Dieugenia falsified evidence.[24]  However, it is not enough for Plaintiff to claim that simply because her account differs from the officers' accounts, Dieugenia must have lied to further the prosecution.  *See, e.g., Buie v. City of New York*, No. 12–CV–4390, 2015 WL 6620230, at *9 (E.D.N.Y. Oct. 30, 2015) (granting summary judgment in favor of an officer because there is no record evidence that the officer was involved in preparing the criminal complaint, which allegedly contained false information); *Lewis v. City of New York*, 591 F. App'x. 21, at 22 (2d Cir. 2015) (summary order) ("[Agreeing] with the district court that because [plaintiff] has provided no detail regarding the evidence purportedly fabricated by the defendant officers, he has not stated a plausible claim for denial of the right to a fair trial.").[25]  Accordingly, the Court grants summary judgment for Defendants on Plaintiff's claim of denial of a fair trial.

## CONCLUSION

For the reasons stated above, Defendants' partial summary judgment motion is GRANTED in part and DENIED in part.  Specifically, Defendants' partial summary judgment motion is GRANTED as to Plaintiff's claims of denial of the right to a fair trial, failure to intervene against Dieugenia, and unlawful stop and search against Pasynkov.  However,

---

[24] The mere assertions of Plaintiff's counsel at the pre-motion conference that the fair trial claim was based on Dieugenia having fabricated evidence in his paperwork and in the criminal complaint (*see* Transcript, April 26, 2016) are insufficient to raise a material issue of fact.  Rather, counsel must identify record evidence of any such paperwork signed by Dieugenia. *See Monahan*, 214 F.3d at 292 (court "is not required to consider what the parties fail to point out").

[25] Given the Court's ruling that Plaintiff has not even identified the information allegedly fabricated by Defendants, the Court need not address Defendants' other two arguments in support of dismissing Plaintiff's denial of fair trial claim, namely, that:  (1) to the extent Plaintiff's evidence of Defendant's fabricated statements is in written form (*e.g.*, a criminal court complaint), it constitutes inadmissible hearsay and thus fails to meet the "likely to influence a jury" standard established in *Ricciuti* (Defs. Mem. at 11–12); and (2)  Plaintiff's acceptance of an ACD precludes a fair trial claim (*id*. at 11).

Defendants' partial summary judgment motion is DENIED as to Plaintiff's (1) false arrest claim against Dieugenia, (2) unlawful stop and search claim against Dieugenia, and (3) failure to intervene claim against Pasynkov with respect to Dieugenia's alleged false arrest and unlawful search of, and use of excessive force, against Plaintiff.

                                        SO ORDERED.


                                        */s/ Pamela K. Chen*
                                        Pamela K. Chen
                                        United States District Judge

Dated: February 27, 2017
       Brooklyn, New York