UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------     x

NATIFAH COOPER,

                                    Plaintiff,

               -against-                                          14-CV-6136 (PKC)

POLICE OFFICER PAUL DIEUGENIA,

                                    Defendant.


-------------------------------------------------------------     x


---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION FOR AT-
TORNEY'S FEES AND COSTS**

---


ROBERT MARINELLI, ESQ.
305 Broadway, Suite 1001
New York, New York 10007
(212) 822-1427

*Attorney for Plaintiff*

## TABLE OF CONTENTS

**INTRODUCTION** ........................................................................................................... **1**

**FACTS** ............................................................................................................................ **2**

**ARGUMENT** .................................................................................................................. **3**

    I.    PLAINTIFF SHOULD RECOVER FULL ATTORNEYS' FEES AND COSTS FOR THE WORK PERFORMED ON THE LITIGATION AND THE INSTANT FEE APPLICATION.................................................................................................... 3

A.    Plaintiff is Entitled to Recover Fees and Costs as a Prevailing Party .................................. 3

B.    The Hourly Rates Requested are Reasonable.................................................................. 7

C.    The Time Expended By Plaintiff's Counsel Was Reasonable............................................13

D.    A Reduction in Attorneys' Fees is Not Appropriate Where Plaintiff's Claims Involve a Common Core of Facts or Are Based on Interrelated Legal Theories..................................15

## TABLE OF AUTHORITIES

### Cases

*Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975) ..............................................................4

*Andrews v. City of New York*, No. 14-CV-4845, 2015 WL 2237060 (E.D.N.Y, May 12, 2015)....8

*Artemide Inc. v. Spero Elec. Corp.*, 2010 U.S. Dist. LEXIS 136870, 2010 WL 5452075 (EDNY. Nov. 23, 2010) ..............................................................................................................................8

*Barbour v. City of White Plains*, 788 F. Supp. 2d 216 (S.D.N.Y. 2011) ........................................2

*Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) ...............................5

*Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277 (2d Cir. 2011) ...................................................................................................................................5

*Blount v. City of New York*, 11-CV-0124 (BMC), 2011 WL8174137 (E.D.N.Y.  Aug. 11, 2011).8

*Blum v. Stenson*, 465 U.S. 886 (1984) ...........................................................................................7

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ...........................................................................6

*Davis v. City of New Rochelle*, 156 F.R.D. 549, 560 (S.D.N.Y. 1994) ...................................14, 15

*Dweck v. Amadi*, 10 Civ. 2577 (RMB) (HBP), 2012 U.S. Dist. LEXIS 102987, 2012 WL 3020029, at *4 & n.5 (S.D.N.Y. July 6, 2012) ..........................................................................10

*Farrar v. Hobby*, 506 U.S. 103, 114 (1992) ..................................................................................5

*Fox v. Vice*, 131 S. Ct. 2205 (2011) ..............................................................................................7

*Gagne v. Maker*, 594 F.2d 336 (2d Cir.1979) ...........................................................................7, 14

*Genger v. Genger*, No. 14 Civ. 5683 (KBF), 2015 U.S. Dist. LEXIS 28813, 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015) .................................................................................................10

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ......................................................................4, 9, 13, 15

*Himmel v. Country in New York, LLC*, No. 09 Civ. 5073(LMM)(DF), 2011 WL 31045 (S.D.N.Y. Jan. 4, 2011) ..............................................................................................................................7

*Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.*, 478 F. Supp. 2d 508 (S.D.N.Y. 2007) .........................................................................................................................2

*Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) ...........................................5, 6

*Kerr v. Quinn*, 692 F.2d 875 (2d Cir.1982) ..................................................................................4

*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998) ...............................................15

*LeBlanc-Sternberg*, 143 F.3d 748, 763 (2d Cir. 1998) ................................................................16

*Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407 (2d Cir. 1987) .............7

*Millea v. Metro-N. R. Co.*, 658 F.3d 154  (2d Cir. 2011) ...........................................................5, 6

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) .............................................................................15

*Natural Resources Defense Counsel, Inc. v Fox*, 129 F. Supp. 2d 666, 675 (SDNY 2001) .........15

*New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).......14

*New York State Ass'ssn for Retarded Children v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983) ................................................................................................................................................13

*OZ Mgmt.*, 2010 U.S. Dist. LEXIS 138873, 2010 WL 5538552, at *4 ........................................11

*Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010) ...........................................................5

*Quaratino v. Tiffany & Co.*, 166 F.3d 422 (2d Cir. 1999) ........................................................2, 6

*Raishevich v. Foster*, 247 F.3d 337 (2d Cir. 2001) ......................................................................4

*Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1183-84 (2d Cir. 1996) ........................................14

*Reiter v. MTA New York City Transit Authority*, 457 F.3d 224 (2d Cir. 2006)...............................7

*Rosado v. City of New York*, No. 11 Civ. 4285(SAS), 2012 WL955510 (S.D.N.Y. Mar. 15, 2012) ...................................................................................................................................................2, 6

*Siracuse v. Program for the Development of Human Potential*, 2012 WL 1624291 (E.D.N.Y. 2012)...........................................................................................................................................4

*Thomas v. City of New York*, 2017 U.S. Dist. LEXIS 199235, (EDNY. Dec. 1, 2017).................8

*Thorsen v. County of Nassau*, No. 03 CV 1022, 2011 WL 1004862 (E.D.N.Y. Mar. 17, 2011)....8

*Trichilo v. Secretary of Health and Human Services*, 823 F.2d 702 (2d Cir. 1987), reaff'd and extended, 832 F.2d 743 (2d Cir. 1987).....................................................................................15

*Tucker v. City of New York*, 704 F. Supp. 2d 347 (S.D.N.Y. 2010)..........................................2, 6

*U.S. Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir. 1989) ..............16

*v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 361 (S.D.N.Y. 2010) ...................................11

**Statutes**

42 U.S.C. §1988 ...............................................................................................................3, 5, 10, 16

Fed. R. Civ. P. 68..........................................................................................................................10

Federal Rule of Civil Procedure 54(d) .........................................................................................16

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------- x

NATIFAH COOPER,

                              Plaintiff,

                 -against-                       14-CV-6136 (PKC)

POLICE OFFICER PAUL DIEUGENIA,

                            Defendant.

-------------------------------------------------------- x

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## HER MOTION FOR ATTORNEY'S FEES AND COSTS

### INTRODUCTION

On October 26, 2017, this Court entered a Judgment against defendant Paul Dieugenia and in favor of plaintiff Natifah Cooper.[1] The Judgment was based on a jury verdict in plaintiff's favor on her 42 U.S.C. §1983 ("Section 1983") claim for excessive force, which was rendered on October 4, 2017. Pursuant to the Judgment, plaintiff seeks reasonable attorneys' fees at a rate of $425 per hour for partner Robert Marinelli ("Marinelli"), $300 per hour for Juliene Drei Munar ("Munar"), a fourth-year associate at Marinelli's firm, and $400 per hour for Ryan Lozar ("Lozar"); as well as reasonable costs incurred during the litigation.

As set forth in the time sheets and records accompanying Marinelli's declaration, plaintiff is requesting $129,688.75 in legal fees for Marinelli, $2,680 for Lozar, and $51,450 for Munar. Additionally plaintiff requests reimbursement for $1,219 in expenses and a recovery of

---

[1] This action was filed on October 20, 2014.

$8,882.50 and $800 for the time expended by Marinelli and Lozar, respectively, litigating this fee motion.[2]

## FACTS

### The Incident

On April 17, 2013, plaintiff and her boyfriend, Alexander Kosterkin ("Kosterkin"), were walking their dog in a beach area across the street from Kosterkin's house. In the distance, they saw a small fire. During the course of the walk, defendant Paul Dieugenia ("Dieugenia")  and his partner Aleksandr Pasynkov ("Pasynkov")[3] approached plaintiff and Kosterkin and placed Kosterkin in handcuffs. The officers gave no reason for his arrest.

Plaintiff walked behind Pasynkov as he escorted Kosterkin to a police vehicle, and then went to Kosterkin's house to drop off the dog. When plaintiff returned, Kosterkin attempted to toss his phone in plaintiff's direction. When she bent over to pick up the phone, Dieugenia pushed her, twisted her arm, struck her on the side of her face, threw her to the ground, shoved her face into the dirt, and placed a knee on her back. Plaintiff was arrested, taken to Central Booking, and, after numerous court appearances, received an adjournment in contemplation of dismissal (ACD).

---

[2] Reasonable fees are routinely awarded for work and time spent on litigating fee applications. *See Quaratino v. Tiffany & Co.*, 166 F.3d 422, 427-28 (2d Cir. 1999); *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 223 (S.D.N.Y. 2011); *Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.*, 478 F. Supp. 2d 508, 513 (S.D.N.Y. 2007). That is even true in the Rule 68 context. *Rosado v. City of New York*, No. 11 Civ. 4285(SAS), 2012 WL955510 at *6 (S.D.N.Y. Mar. 15, 2012); *Tucker v. City of New York*, 704 F. Supp. 2d 347, 358 (S.D.N.Y. 2010). The total fee amount currently listed $193,070.00 reflects the reasonable fees for litigating the case through trial, plus the fees and costs for researching, preparing, and writing this motion through 6:00 p.m. on December 26, 2017. We will supplement the total fees and detail the time spent litigating this motion including any additional work done for any reply brief.

[3] Plaintiff withdrew her claim against Pasynkov immediately prior to summations.

As a result of Dieugenia's use of excessive force, plaintiff suffered a sprained back and contusions to her wrist. For these injuries, plaintiff received treatment at Coney Island Hospital. Ms. Cooper retained the undersigned to pursue a claim of false arrest, excessive force, and related claims.

**The Trial**

On October 2, 2017, jury selection took place, followed by opening statements of counsel. Marinelli Decl. ¶ 5. After hearing testimony from the plaintiff, Kosterkin, the defendant, Pasynkov, and non-party witnesses Irina Kosterkin, Alexandr Kosterkin, and Lieutenant James Brodsky, followed by closing arguments and a charging conference, the jury began its deliberations on October 4, 2017. Marinelli Decl. ¶ 6.

The jury rendered a verdict for plaintiff, finding that Dieugenia used excessive force against her and awarded plaintiff $30,000.00 in compensatory damages. Marinelli Decl. ¶ 7. Shortly thereafter the City of New York moved to have itself substituted as the judgment-debtor in lieu of Dieugenia. That motion was denied. The defendant also asked for additional time to move to set aside the verdict, but ultimately elected to forego any further motion practice. Thus, the only issue remaining before the Court is the amount of legal fees and costs to be awarded to plaintiff as the prevailing party.

**ARGUMENT**

**I.     PLAINTIFF SHOULD RECOVER FULL ATTORNEYS' FEES AND COSTS FOR THE WORK PERFORMED ON THE LITIGATION AND THE INSTANT FEE APPLICATION**

**A. Plaintiff is Entitled to Recover Fees and Costs as a Prevailing Party**

The plain language of 42 U.S.C. §1988 ("Section 1988") provides that "[i]n any action or proceeding to enforce a provision of [Section 1983]  the court, in its discretion, may allow the

prevailing party…a reasonable attorney's fee as part of the costs." The discretionary phrasing notwithstanding, the prevailing plaintiff is presumptively entitled to recover reasonable attorneys' fees, absent exceptional circumstances. *See Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983) ("[A] prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.") (internal citation and quotation); *Raishevich v. Foster*, 247 F.3d 337, 344 (2d Cir. 2001) (The discretion afforded by the statute "is narrowed by a presumption that successful civil rights litigants should ordinarily recover attorneys' fees."); *Siracuse v. Program for the Development of Human Potential*, 2012 WL 1624291, *16 (E.D.N.Y. 2012) (Pollak, M.J.) ("As prevailing parties, there is 'a presumption' that they 'should recover an attorney's fee unless special circumstances would render such an award unjust.'") (quoting *Kerr v. Quinn*, 692 F.2d 875, 877 (2d Cir.1982)).

The purpose of the attorneys' fees provisions is to enable plaintiffs with valid claims to attract effective legal representation and thereby encourage private enforcement of civil rights statutes, to the benefit of the public as a whole. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415 (1975); *Hensley v. Eckerhart*, 461 U.S. 424, 445 (1983) (Brennan, J., dissent).[4] This oft-cited policy favoring fully compensable fee awards for prevailing plaintiffs is not just an abstract principle, but reflects a fundamental reality of legal practice nationally, in New York, and

---

[4]     The Supreme Court in *Hensley* quoted from the 1976 Senate report on the Civil Rights Attorney Fees Award Act, as follows: All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain. In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must recover what it costs them to vindicate these rights in court. 461 U.S. at 445 (citing Senate Report 2, House Report 1-3, U.S. Code Cong. & Admin. News 1976, p.5910).

in this District. If a plaintiff cannot obtain ample attorneys' fees when they prevail in a civil rights case, there will be few or no "private attorney general" actions brought because few attorneys will be willing or able to take on such cases. Most significantly, the attorneys' fees provided under 42 U.S.C. § 1988 are intended to attract qualified counsel even in cases where the anticipated monetary recovery may otherwise be too small to create a contingency significantly attractive for representation in complex or protracted matters. *See Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005).

**Determining Reasonable Attorneys' Fees**

In the Second Circuit, "[a]ttorneys' fees are awarded by determining a presumptively reasonable fee." *See Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289-90 (2d Cir. 2011). Both the Second Circuit and United States Supreme Court "have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – constitutes the "presumptively reasonable fee." *Millea v. Metro- N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *see also Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672-73 (2010) ("[T]he lodestar method yields a fee that is presumptively sufficient" to "induce a capable attorney to undertake the representation of a meritorious civil rights case"). Thus, a court awarding fees must first calculate the lodestar. *See Millea*, 658 F.3d at 167.

Once the court has determined the lodestar, it may depart from that amount only "in exceptional circumstances." *Id.* at 169 (emphasis added). Ultimately, "'the most critical factor' in the district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained by the plaintiff.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

However, it is well-settled principle that the fees need not be proportional to the damages recovered in the underlying litigation. In fact, the Supreme Court has rejected a "rule of proportionality", i.e., mechanistically linking the prevailing plaintiff's legal fees to the amount of damages a civil rights plaintiff actually recovers. *See City of Riverside v. Rivera*, 477 U.S. 561, 574-575 (1986) ("Because damages awards do not reflect fully the public benefit advanced by civil rights litigation, Congress did not intend for fees in civil rights cases, unlike most private law cases, to depend on obtaining substantial monetary relief."). The Second Circuit has "repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation." *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005). In so doing, the Second Circuit observed:

> [Section] 1988 was enacted in part to secure legal representation for plaintiffs whose constitutional injury was too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements. If the district court reduced the fee in the belief that the claimed hours were simply disproportionate in a case involving a $2500 injury, without regard to the reasonableness of the attorney's expenditure of time in responding to the particular circumstances, this was error.

*Id.*; *see also Millea v. Metro-North Railroad Co.*, 68 F.3d 154 (2d Cir. 2011) ("Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes. . . [t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery.") (emphasis in original); *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 424 (2d Cir. 1999) (rejecting a "billing judgment" rule that would limit an awardable fee to one rationally related to the recovery that could be expected ex ante).

In addition to attorney hours expended litigating a case on the merits, the time spent preparing the fee application itself is also compensable. *See Rosado*, 2012 WL 955510 at *6 ("[A]s

a matter of equity, plaintiff should be awarded some amount for the time his counsel spent in preparing the instant fee application."); *Tucker*, 704 F. Supp. 2d at 358. Compensating counsel for the time spent preparing a fee application is essential to avoiding the "'dilut[ion of] the value of a fees award by forcing attorneys into extensive, uncompensated litigation in order to gain any fees.'" *Himmel v. Country in New York, LLC*, No. 09 Civ. 5073(LMM)(DF), 2011 WL 31045, at *3 (S.D.N.Y. Jan. 4, 2011) (quoting *Gagne v. Maker*, 594 F.2d 336, 344 (2d Cir.1979)).

Notwithstanding these requirements, the Supreme Court has "emphasize[d] that the determination of fees should not result in a second major litigation." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011). Judges "need not, and indeed should not, become green-eyeshade accountants." *Id.* "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* Hence, the plaintiff is entitled to recover her legal fees and expenses, which necessarily includes the time expended in making the instant motion.

**B.  The Hourly Rates Requested are Reasonable**

A reasonable hourly rate is ordinarily determined by the prevailing rates "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Reiter v. MTA New York City Transit Authority*, 457 F.3d 224, 232 (2d Cir. 2006), (quoting *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984)). Courts may rely upon their own knowledge of private firm hourly rates in deciding what reasonable rates are in the community.  *See Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987).

As the Court noted in *Blum*, "Congress directed that attorney's fees be calculated according to standards currently in use under other fee-shifting statutes: 'It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types

of equally complex Federal litigation, such as antitrust cases.'" *Blum*, 465 U.S. at 893 (quoting S.

Rep. No. 94-1011, p. 6 (1976)). The Court continued,

> the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate…To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to – for convenience – as the prevailing market rate.

*Id.* at 898.

### *Marinelli's Hourly Rate*

Marinelli's request for an hourly rate of $425.00 is reasonable and in line with a partner

in a small law firm with over twenty years of experience. *See Thomas v. City of New York*, 2017

U.S. Dist. LEXIS 199235, (EDNY. Dec. 1, 2017) (Finding that the Court's recommended rate of

$450 to an attorney with 20 years experience was within the range of rates awarded in the Ea-

stern Distirct); *Artemide Inc. v. Spero Elec. Corp.*, 2010 U.S. Dist. LEXIS 136870, 2010 WL

5452075 (EDNY. Nov. 23, 2010) ("Current prevailing rates for partners in the Eastern District

range from $350 to $450."); *Blount v. City of New York*, 11-CV-0124 (BMC), 2011 WL8174137

(E.D.N.Y.  Aug. 11, 2011) (awarding a $425 hourly rate to an attorney with an office in Brook-

lyn with over fifteen years of experience who has appeared in over 150 federal lawsuits); *An-

drews v. City of New York*, No. 14-CV-4845, 2015 WL 2237060 (E.D.N.Y, May 12, 2015)

(awarding a fee of $425 to a solo practitioner in Brooklyn with experience in approximately 650

Section 1983 cases); *Thorsen v. County of Nassau*, No. 03 CV 1022, 2011 WL 1004862, at *5

(E.D.N.Y. Mar. 17, 2011) (finding $450 to be a reasonable rate for a partner with an office in

Nassau County) (collecting cases).

Where possible, the best measure of a reasonable hourly rate is the rate actually charged and received by the attorneys seeking fees. Here, the hourly rates sought for the Marinelli involved are the same as the rates charged to and paid by hourly paying clients[5]. Moreover, they are all well within the rates deemed reasonable for attorneys with similar, if not less, experience both generally and in the civil rights field.

Furthermore, when evaluating the reasonableness of the fees requested, the court should take into account the level of success that was obtained on behalf of the client. *See Hensley*, 461 U.S. at 440 ("[T]he extent of plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees."). Here, the amount of compensatory damages was at the upper end of what plaintiff could reasonably have anticipated for her excessive force claim in view of the limited extent of her documented medical injuries, and thus represents a substantial victory.

Marinelli has been admitted to practice law in the State of New York since 1993 and possesses a considerable amount of experience in the litigation of Section 1983 actions against the City of New York. Since 2008, Marinelli has litigated hundreds of matters in federal court in the Eastern and Southern Districts of New York – virtually all of which involve claims against the NYPD for, *inter alia*, false arrest, malicious precaution, and excessive force. *See* Marinelli Decl. ¶ 9.

In addition to his extensive experience in civil rights litigation, Marinelli has substantial experience in criminal law, having represented hundreds of clients and tried over 20 cases to a jury verdict; and has perfected scores of appeals before New York State appellate courts. *See*

---

[5] In previous matters, Marinelli has been able to resolve his clients' rights to fees without motion practice, and thus the reasonableness of his hourly rate has never been adjudicated.

9

Marinelli Decl. ¶ 10**.** His experience equals, and often surpasses, that of other attorneys who have been awarded hourly rates of $425 and higher in this district.

As further set forth in Marinelli's declaration, the clients Marinelli represents in civil rights cases can only afford to retain an attorney on a contingency basis, and all of his cases are handled that way. Marinelli does not receive an initial retainer from any of his civil rights clients, nor are any expected to make even a token contribution to litigation expenses. Marinelli is compensated based on a percentage of any judgment, award, or settlement, or through separately negotiated fee awards and settlements, normally pursuant to Section 1988 or Fed. R. Civ. P. 68. Marinelli bears all the costs of litigation while the case is pending, as well as the risk that the case will result in a judgment against the plaintiff, and has always released his client from any obligation to pay for expenses his firm advanced if there is no recovery.  Marinelli Decl. ¶ 16-18.

Civil rights cases are extremely risky and involve complex issues of law. It is well known that only a small segment of the bar is willing to take such cases, particularly those where the damages are not particularly substantial, as a mainstay of the firm's practice. Because the chances of losing police misconduct cases is high, civil rights lawyers in New York depend on the recovery of a full "lodestar recovery" if they do prevail.

***Munar's Hourly Rate***

The rate of $300 per hour requested by Munar is well within the range of rates that have been considered reasonable for associates with similar experience. *See, e.g., Genger v. Genger*, No. 14 Civ. 5683 (KBF), 2015 U.S. Dist. LEXIS 28813, 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015) ("New York district courts have ... recently approved rates for law firm associates in the range of $200 to $450 per hour."); *Dweck v. Amadi*, 10 Civ. 2577 (RMB) (HBP), 2012 U.S. Dist. LEXIS 102987, 2012 WL 3020029, at *4 & n.5 (S.D.N.Y. July 6, 2012) (collecting

cases approving rates between $180 and $440 per hour for associates); *OZ Mgmt.*, 2010 U.S. Dist. LEXIS 138873, 2010 WL 5538552, at *4 (approving rates between $355 and $400 per hour for associates); *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347, 361 (S.D.N.Y. 2010) ("The hourly rates of $390.00 to $470.00 charged by the associates and junior partner representing Vuitton fall at the very top of the spectrum of reasonable hourly rates for associates.").

Munar is an associate attorney at the Law Office of Robert Marinelli, where she handles discovery, takes and defends depositions, contributes to discovery and dispositive motions, actively participates in trial preparation and execution, and conducts examinations of witnesses at trial. Munar Decl. ¶ 1, 6. Before joining the firm in 2016, Munar practiced as a litigator at Wigdor LLP, where she specialized in employment discrimination actions. Munar Decl. ¶ 7. At Wigdor, Munar also handled civil rights case involving claims of excessive force, false arrest, false imprisonment, and malicious prosecution. Munar participated in all aspects of litigation, including taking and defending depositions. Munar Decl. ¶ 8.

Munar received her B.A. from the University of California, Berkeley in 2010, and her J.D. from New York University School of Law in 2014. Munar Decl. ¶ 4. During law school, Munar worked on civil rights and employment discrimination matters as a law clerk at Sanford Heisler LLP and Outten & Golden LLP. Munar Decl. ¶ 20.

***Lozar's Hourly Rate***

Lozar requests an hourly rate of $400 per hour. Lozar is a solo practitioner who has been in private practice and specialized in Section 1983 litigation since 2015. He performs work for Marinelli on an *ad hoc* basis. Lozar Decl. ¶ 6.

Prior to opening his own practice, Lozar worked as a judicial law clerk for the Honorable Vera M. Scanlon at the United States District Court for the Eastern District. Prior to that clerkship Lozar clerked for two years for a district court in San Juan, Puerto Rico. During his three years as Judge Scanlon's law clerk, Lozar was highly involved in substantive and procedural work involving various 1983 cases.[7] Lozar's impressive and varied career also includes working as a Special Assistant United States Attorney in the Southern District of California where he represented the United States in felony prosecutions, as well as work and asylum seekers in Ecuador, and as a mid-level associate at the firm of Kramer Levin Naftalis & Frankel ("Kramer"), where the firm billed for Lozar's time at hourly rates up to $510, which is substantially higher than what is sought here. Lozar Decl. Regarding Fees and Rates ("Lozar Rate Decl.") 2 ¶ 14-15, 17.

The rate Lozar requests has been ratified by a United States District Court for the Southern District. In *Williams v. City of N.Y.*, et al., docketed as 16 Civ 233 (JPO), the Court determined that Lozar's "rate of $400 per hour is in line with the prevailing market rate for a similarly credentialed attorney." (See Opinion and Order dated May 9, 2011, docketed as Document 49 at 3). Moreover, the City later agreed to this rate in August 2017 when Lozar submitted an invoice

---

[7] Lozar also worked for two years as a federal judicial law clerk in San Juan which also required work on many 1983 cases.

reflecting his $400.00 hourly rate, which the City paid without objection. Finally, Lozar has billed private clients directly for his legal services, in lieu of a contingency agreement. Not only did Kramer routinely bill for his time at hourly rates ranging from $490 to $510, but Lozar has billed clients $400.00 to resolve a defamation suit. Lozar Rate Decl. ¶ 11-12.

## C. **The Time Expended By Plaintiff's Counsel Was Reasonable**

The Supreme Court has noted that a reasonable hourly fee will normally encompass all hours reasonably expended in this litigation. *Hensley*, 461 U.S. at 435. A party seeking fees bears the burden of supporting its claims of hours expended by accurate, detailed and contemporaneous time records. *See New York State Ass'ssn for Retarded Children v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983). Here, Marinelli, Lozar, and Munar have submitted detailed, accurate and contemporaneous time records. *See* Marinelli Decl. ¶ 6, 7, 8, 9, 10.

It bears noting that while Marinelli, Lozar, and Munar all worked on the case, they did so to divide the work and not to duplicate it. This is evidenced by the fact that only one of the attorneys attended court conferences and participated in phone calls with defense counsel. The fact that there were phone calls and emails between plaintiff's attorneys is not indicative of duplication of work. It is normal within a firm for attorneys to confer about case strategy and other discovery related matters. In this same vein, it was reasonable for Marinelli, a solo practitioner to bring on and consult with Lozar as they two of them evaluated the strengths and weakness of the claims and defenses while determining the best courses of action to take in the prosecution of plaintiff's case.

Work which may appear duplicative reflects collaboration, not redundancy. For example, in answering defendants' motion for summary judgment, the attorneys each worked on the same document at different times and stages. As one attorney completed a draft, the other reviewed

and edited it. Using this method, the aggregate time worked remained reasonable and appropriate. It is important to note that this process does not result in additional hours being billed to the file, as the amount of work remains constant. Instead, it is the allocation of hours between the lawyers that changes. Additionally, based on concerns expressed by defendants, plaintiff has drastically reduced the amount of hours billed by Munar and Lozar to ameliorate redundancy concerns.[8]

The records detail the activities and work performed by Marinelli in this matter which total 309.9 hours.  *See* Marinelli Decl. ¶6.  At an hourly rate of $425.00, Plaintiff is requesting $129,688.75 for his work. Id.  Marinelli also expended 20.9 hours on the instant motion and requests $8,882.50 for this work. Id.  In total, Marinelli requests $138,571.25 for his work. Id.  Munar bills 173.5 hours at an hourly rate of $300.00, and requests $51,450.00 for her work.  See *See* Marinelli Decl. ¶9.  Lozar bills 6.7 hours at an hourly rate of $400.00, and requests $2,760.00 for his work.  See *See* Marinelli Decl. ¶10.  In total, plaintiff's counsel is seeking to be paid for a total of about 500 hours, which is eminently reasonable for a case that was litigated for three years, included summary judgment motion practice, and then through a jury trial.

The attorneys' fees sought in this application include the time spent preparing the instant fee application. It is well-settled that attorneys should be compensated for "time reasonably spent by plaintiff's attorneys in establishing their fee pursuant to fee-shifting statures, such as §1988." *Davis v. City of New Rochelle*, 156 F.D.R. 549, 560 (S.D.N.Y. 1994) (quoting *Gagne v. Maher*, 594 F.2d 336, 344 (2d Cir. 1979), aff'd, 448 U.S. 122(1980)); *Reed v. A.W. Lawrence & Co.*, 95

---

[8] Munar submits a bill for 173.5 hours. In actuality, Munar worked 235 hours. Munar Decl. ¶ 11, Exhibit 6;  Lozar submits a bill for 6.7 hours, Lozar worked 28.3 hours Lozar Decl. ¶ 10, Exhibit 7.

F.3d 1170, 1183-84 (2d Cir. 1996); *New York State Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

The time submitted for preparing this fee application is a mere 22.9[9] hours, which is approximately 4% of the total time claimed for work on this case. "The Second Circuit has upheld fee awards where the time spent on the fee application was up to 24% of the total time claimed…[and] other courts within this Circuit have awarded fee application awards in the range of 8 to 24 percent of the total time claimed." *Natural Resources Defense Counsel, Inc. v Fox*, 129 F. Supp. 2d 666, 675 (SDNY 2001) (quoting *Davis*, 156 F.R.D. 549, 561 (SDNY 1994)); *see Trichilo v. Secretary of Health and Human Services*, 823 F.2d 702 (2d Cir. 1987), reaff'd and extended, 832 F.2d 743 (2d Cir. 1987) (approved fee application constituting 24% of total time claimed).

**D. A Reduction in Attorneys' Fees is Not Appropriate Where Plaintiff's Claims Involve a Common Core of Facts or Are Based on Interrelated Legal Theories**

Defendants may argue that the fee award should be substantially reduced because plaintiff was unsuccessful on certain claims and she withdrew claims against Pasynkov. This view is incorrect.

In *Hensley v. Eckerhart*, 461 U.S. 424, 434 (U.S. 1983), the Supreme Court held that where a plaintiff's claims "involve a common core of facts or [are] based on related legal theories[,] [m]uch of counsel's time will be devoted generally to the litigation as a whole . . . . Such a lawsuit cannot be viewed as a series of discrete claims." Accordingly, interpreting *Hensley*, the Second Circuit has held that lack of success on all claims does not automatically trigger a reduction in the presumptively reasonable fee: "A plaintiff's lack of success on some of

---

[9] 20.9 hours billed by Marinelli and 2 hours billed by Lozar.

his claims does not require the court to reduce the lodestar amount where the successful and the unsuccessful claims were interrelated and required essentially the same proof." *Murphy v. Lynn*, 118 F.3d 938, 952 (2d Cir. 1997) (citing *Hensley* and collecting cases); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998) ("When a plaintiff has achieved substantial success in the litigation but has prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded.").

Here, plaintiff's claims arose from a common core of facts occurring over a short period on the evening of April 7, 2013. Each of plaintiff's claims required a presentation of the evidence relating to the events of that evening.

Defendants conceded that the facts underlying plaintiff's unsuccessful claims were inextricably intertwined with those relating to her claim of excessive force when they successfully insisted that factual questions concerning plaintiff's unsuccessful false arrest claims be presented to the jury in their post-verdict special interrogatories. See, Exhibit 8. Defendant cannot now complain that discovery and litigation concerning plaintiff's other claims was not necessary for the litigation of plaintiff's excessive force claim.

**Plaintiff is Entitled to Recover Reasonable Out-of-Pocket Expenses**

Pursuant to 42 U.S.C. §1988 and Federal Rule of Civil Procedure 54(d), Plaintiff seeks an award of reasonable out-of-pocket expenses. As a prevailing party, Plaintiff is entitled to recover such expenses incurred during the litigation that would normally be charged to a fee-paying client. The non-taxable expenses of this litigation are attached to the Marinelli Decl. as Exhibit 2. These expenses are of the type routinely billed by attorneys to fee-paying clients and were actual and necessary costs incurred to prosecute the case. *See, e.g.*, *LeBlanc-Sternberg*, 143 F.3d 748,

16

763 (2d Cir. 1998); *U.S. Football League v. National Football League,* 887 F.2d 408, 416 (2d Cir. 1989). The total nontaxable out-of-pocket expenses incurred by Plaintiff is $1,219. See, Exhibit 1.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that this Court award a total of $193,070.25 as attorneys' fees and costs to plaintiff as a prevailing party in this litigation, in the following amounts: a) Attorneys' fees to Marinelli at the rate of $425 per hour for 309.9 hours spent on this litigation through the date of this application for a total of $129,688.75; b) Attorneys' fees to Munar at the rate of $300 per hour for 173.5 hours spent on this litigation through the date of this application for a total of $51,450, c). Attorneys' fees to Lozar at the rate of $400 per hour for 6.7 hours spent on this litigation through the date of this application for a total of $2,670, d). Attorneys' fees for preparing the instant motion to Marinelli at the rate of $425 per hour for 20.9 hours for a total of $8,822.50, and to Lozar at the rate of $400 per hour for 2 hours spent on this motion for a total of $800, and d) Reasonable costs and expenses in the amount of $1,219; and e) Such other costs and expenses as may be incurred hereafter.

Dated  :  December 26, 2017
            New York, New York

_____/s_____
ROBERT MARINELLI, ESQ.
305 Broadway, Suite 1001
New York, New York 10007
(212) 822-1427