UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------- x

NATIFAH COOPER,

                               Plaintiff,

               -against-                            14-CV-6136 (PKC)

POLICE OFFICER PAUL DIEUGENIA,

                               Defendant.

----------------------------------------------------------- x

---

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER MOTION FOR ATTORNEY'S FEES AND COSTS

---

ROBERT MARINELLI, ESQ.
305 Broadway, Suite 1001
New York, New York 10007
(212) 822-1427

*Attorney for Plaintiff*

**TABLE OF CONTENTS**

ARGUMENT……………………………………………………………………..1

I.      PLAINTIFF ACHIEVED A HIGH LEVEL OF SUCCESS IN THIS LITIGATION AND AT TRIAL……………………………………………………………...…1
  A.      Pre-Trial Settlement Discussion...................................................................1

II.     THE DEFENSE VERDICT ON PLAINTIFF'S FALSE ARREST CLAIM DOES NOT WARRANT A REDUCTION IN THE REQUESTED………..………………………………………………...…3

III.    PLAINTIFF'S COUNSEL'S REQUESTED HOURLY RATES ARE REASONABLE AND APPROPRIATE…………………………………………………4
  A.      Marinelli's Rate……………....................................................................6
  B.      Lozar's Rate.................................................................... .....8
  C.      Munar's Rate..................................................................................10

IV.     PLAINTIFF'S COUNSEL'S HOURS ARE NOT ESCESSIVE……………12
  A.      The False Arrest Litigation………………...................................................12
  B.      Marinelli Is Not Billing For Defending Plaintiff In a Criminal Action.......12
  C.      Plaintiff Counsel Did Not Dupicate Efforts..................................................12
  D.      Marinelli's Hours Are Not Excessive………..................................................13
  E.      Munar's Hours are Not Excessive………………………………….........14
  F.      Lozar's Hours Are Not Excessive………..............................................14

IV.     PLAINTIFF ATTEMPTED TO NEGOTIATE A FEE SETTLEMENT.....,.....15

POINT I

PLAINTIFF ACHIEVED A HIGH LEVEL OF SUCCESS IN
THIS LITIGATION AND AT TRIAL

Defendant argues that plaintiff should only recover a modest amount of her legal fees as she only achieved a small degree of success. This argument is grounded on misleading and, at times, outright incorrect statements of law as applied to an inaccurately presented factual record. As set forth in the moving papers and below, the defendant maintained a no-pay position in this matter until virtually the eve of trial, when they finally offered plaintiff $10,000.[1] Moving and Reply Declarations of Robert Marinelli, dated February 9, 2018 ("Marinelli Reply Dec") ¶ 9. The jury returned a verdict for plaintiff and awarded compensation in the amount of $30,000. As the prevailing party, plaintiff is also entitled to recover her legal fees and costs, which will increase the total amount of her recovery substantially. Such an outcome plainly reflects a high level of success.

**A.  Pre-Trial Settlement Discussions**

As discussed in greater detail in the Marinelli Reply Dec, the defendant either formally considered this a no-pay case or otherwise were unwilling to consider settlement throughout almost the entire litigation. On March 3, 2016, the parties appeared for a settlement conference during which the assigned magistrate judge recommended that the case settle for an amount that would have netted plaintiff far less than half of the $30,000 awarded by the jury. Plaintiff formally agreed to accept the recommendation, the defendant declined. Marinelli Reply Dec ¶ 6-8. No

---

[1] Plaintiff recognizes that settlement discussions are ordinarily confidential. However, by arguing that plaintiff was largely unsuccessful at trial defendant has placed its prior limited offers in issue.

prior offer had been communicated by the defendant, nor was one proposed following the conference.[2]

It was not until April 2017, well after the close of discovery, dispositive motion practice, and submission of the joint pretrial order, that the defendant made an offer of settlement. The defendant advised that the City would pay plaintiff $2,500, with a separate payment of $7,500 to plaintiff's counsel towards plaintiff's legal fees and costs. Marinelli Reply Dec ¶9. Defendants had not previously offered any money to resolve the case and never served an Offer of Judgment.

B.  Plaintiff Obtained A Highly Successful Outcome

Plaintiff obtained a jury verdict awarding her $30,000 in compensatory damages for the defendant's deliberate use of excessive force. In simple terms, plaintiff received damages in an amount 12 times larger than what defendant had offered prior to trial. It is ludicrous to characterize such an outcome as "limited" or only partially successful.

The defendant, or more accurately, his counsel, plainly concluded early on in this case that the case was sufficiently unwinnable as to not warrant even a modest offer to plaintiff. Defense counsel thus made an informed decision to litigate the case thoroughly through discovery, motion practice, and trial, predicated on its professional view that plaintiff would not prevail and that her damages were limited, at best. It is also clear from her decision to accept the court's recommendation at the settlement conference that plaintiff recognized both the relatively limited ceiling on her potential damages and the possibility that the jury would return a defense verdict on liability.

---

[2] The attorney originally assigned to this case by the Law Department had informed plaintiff's counsel that the City was prepared to settle the case and discussed specific numbers. Plaintiff later learned, after a change in defense counsel, that the first attorney never had settlement authority for any amount, much less $25,000.  This latter communication was made in confirmation of the defendant's no-position.  See, Exhibit 1.

It is therefore obvious that the subsequent verdict of $30,000 represents a relatively stunning victory for plaintiff. She obtained a judgment against the defendant for his unconstitutional conduct and an award of damages that was well beyond what had been judicially recommended as a proposed settlement, and many times more than the value assigned by the defendant. This outcome cannot be described as anything but an overwhelming success.

POINT II

THE DEFENSE VERDICT ON PLAINTIFF'S FALSE ARREST
CLAIM DOES NOT WARRANT A REDUCTION IN THE
REQUIESTED FEES

Defendant further argues that the jury's defense verdict with respect to plaintiff's false arrest claim compels a reduction in plaintiff's requested legal fees. This position is also without merit.  As the Supreme Court has made clear, what matters is whether the plaintiff prevailed generally, not on every single contention. More to the point, the Supreme Court ruled:

> [I]n the real world, litigation is more complex, involving multiple claims for relief that implicate a mix of legal theories and have different merits. Some claims succeed; others fail. Some charges are frivolous; others (even if not ultimately successful) have a reasonable basis. In short, litigation is messy, and courts must deal with this untidiness in awarding fees.
>
> Given this reality, **we have made clear that plaintiffs may receive fees under § 1988 even if they are not victorious on every claim.** A civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes. That 'result is what matters,' we explained in *Hensley v. Eckerhart*. **A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.'**

*Fox v. Vice*, 563 U.S. 826, 833–34 (2011) (quoting *Hensley v. Eckerhart* 461 U.S. 424, 435  (1983) (emphasis supplied)).

To be sure, the Supreme Court pointed out that, "should not reimburse the plaintiff for work performed on claims **that bore no relation to the grant of relief**: Such work cannot be deemed to have been expended in pursuit of the ultimate result achieved." *Id.*, (internal quotation and citation omitted) (emphasis supplied). However, the Court makes clear that where the successful and unsuccessful claims are related, the lack of total victory is not a basis for limiting or precluding legal fees to the prevailing plaintiff.[3]

Here, defendant concedes – as he must – that plaintiff's false arrest and excessive force claims are related. (Def. Brief at 10). As the Court is aware, the instant case was a fairly simple matter concerning the arrest of plaintiff by two police officers in which plaintiff claimed that the arrest was unlawful and the officers used force so excessive as to have violated her constitutional rights. These lawfulness of the arrest could not be separated from the manner in which the arrest was effectuated, just as the conduct of each officer was intertwined with that of the other during the course of these events. In fact, when plaintiff's verdict was returned, defendants vociferously argued that special interrogatories concerning facts relating to the false arrest claim be answered by the jury precisely because the two claims were so closely related. See, Exhibits 3 and 4.

---

[3] See Restivo v. Heseman, 846 F.3d 547, 592 (2d Cir. 2017) (stating that where the district court determines that "the successful and unsuccessful claims are inextricably intertwined and involve a common core of facts or are based on related legal theories, it is not an abuse of discretion to award the entire fee"); McCown v. City of Fontana, 565 F.3d 1097, 1103 (9th Cir. 2009) (holding that the district court correctly treated all of the plaintiff's claims— unsuccessful false arrest and successful excessive force—as "'related' for the purposes of determining attorney's fees" because each "arose from a common core of facts, namely, [plaintiff's] arrest"); Rogers v. Cofield, 935 F. Supp.2d 351, 377  (D.Mass 2013) (awarding fees for unsuccessful force and successful false arrest claim without division because "[t]he common and overlapping facts of the arrest and the purported use of excessive force occurred within the space of 30 minutes at the same location" and involving the same people).

Defendant instead offers the argument that because certain tasks, such as defending against summary judgment motion and portions of the parties' in *limine* motion practice, dealt with plaintiff's false arrest claim, the time spent on these tasks can be "neatly separated" and should not be compensated. (Def. Brief at 10). This argument turns decades of controlling precedent on its head, as well as the congressional purpose of Section 1988.  The Supreme Court has stated in simple and concise terms that a plaintiff who has prevailed on at least one of her claims can recover her legal fees under § 1988 "even if [she is] not victorious on every claim," as a "civil rights plaintiff who obtains meaningful relief has corrected a violation of federal law and, in so doing, has vindicated Congress's statutory purposes." *Id.* at 834. As the Court succinctly stated, "the result is what matters." *Id.* (Internal citation omitted).

Notwithstanding this longstanding principle, defendant urges this Court to deny plaintiff legal fees for time expended on a related claim simply because certain entries were limited to the false arrest claim. In so doing, the defendant asks the Court to follow a line of reasoning entirely antithetical to the Supreme Court's language in *Fox*, and the cases upon which is based. The Supreme Court's edict that work performed for related claims is compensable would be rendered meaningless if the defendant's suggested interpretation were applied. By all accounts the two claims were related, and thus the fact that plaintiff was not ultimately successful on the false arrest claim is irrelevant to the adjudication of this fee motion.

Similarly, defendant asserts that because plaintiff ultimately dismissed claims against defendant Pasynkov, her fees should be "substantially reduced to reflect the abandonment of these claims" (Def. Brief at 10). This argument is equally without merit. Pasynkov and Diugenia, were partners at the time of the incident. Each participated physically in the events surrounding and involving plaintiff's arrest, each testified they witnessed each other's actions. It is difficult to

5

concoct a scenario where issues of fact and law concerning individual defendants would be more intertwined. Moreover, Pasynkov's testimony strongly undercut defendant's credibility. By dismissing him as a defendant, plaintiff was able to bolster Pasynkov's credibility, making him a more compelling witness. Viewed in the context of the case as a whole, withdrawing her claims against Pasynkov was a prudent strategic decision by plaintiff that bore fruit at trial. See Houston v. Cotter, 234 F. Supp.3d 392, 399-400 (EDNY 2017) (rejecting defense argument that divergent force-claim verdicts as to two defendant officers required fee division because the two claims arose from common factual core or related legal theories) (citing cases).

Parenthetically, it is worth noting that the plaintiff prevailed on the false arrest claim at the summary judgment stage. The defendant chose to move for summary judgment on the false arrest claim. In so doing, the defendant forced the plaintiff to expend significant time and resource in order to oppose the motion, which plaintiff was able to do successfully. Having forced plaintiff to expend time successfully fending off a summary judgment motion, defendant cannot rely on his subsequent success at trial on this limited and related claim to avoid his responsibility for these legal fees. Accordingly, neither the defense verdict on plaintiff's false arrest cause of action or the decision to dismiss Pasynkov as a defendant provide any basis to reducing plaintiff's legal fees, and the time spent on these related matters are fully compensable to plaintiff.

POINT III

PLAINTIFF'S COUNSEL'S REQUESTED HOURLY RATES
ARE REASONABLE AND APPROPRIATE

Defendant is asking this Court to substantially reduce the hourly rates sought by attorneys Robert Marinelli, Drei Munar, and Ryan Lozar to figures well below what should be, and ordinarily would be, awarded in the Eastern District for similarly skilled and experienced counsel.

Defendant's arguments are grounded not on evaluations of counsel's experience or objective considerations of factors ordinarily applied to such requests, but rather consist of wholesale attacks on Marinelli's performance at trial, misrepresentations and inaccurate minimizations of each attorney's experience, and flat-out false assertions concerning the time expended by counsel.

A.  Marinelli's Hourly Rate

As an initial matter, defendant's claims that Marinelli has been counsel on only three federal civil rights trials and has practiced civil rights law for eight years are incorrect. Marinelli Reply Dec ¶ 6-8. At the time of plaintiff's trial, Marinelli had tried six civil rights cases in Federal Court.[4]  Marinelli Reply Dec ¶ 13-14. Moreover, Marinelli has been practicing federal civil rights law for almost seventeen, not eight years. During those years the majority of these cases were against the City of New York or its employees, and were defended by the New York City Law Department.[5]  Marinelli Reply Dec ¶ 15-16.  As set forth in the accompanying declaration of Michael Lumer, Marinelli is a highly experienced attorney, who has a wealth of experience in civil rights law, criminal defense, and family law. See, Exhibit 4. He has considerable trial experience that includes but also extends beyond matters limited to Section 1983 claims. This array of trial and litigation experience has helped make Marinelli a better and more versatile attorney than he would have been otherwise, and this diversity should be considered favorable.

---

[4] As well as a state court trial dealing with Section 1983 claims. Marinelli Reply Dec ¶ 15.
[5] For example, Marinelli, along with his former partners Richard Caridnale and Michael Hueston, played an integral role in the litigation and settlement of the class action *Mcbean v. City of New York*, 02-CV-5246 (GEL)(THK) dealing directly with, in part, Muriel Goode-Truffant, who was then head of Special Federal Litigation and is now Corporation Counsel's Managing Attorney, as well as current Special Federal Litigation supervisor Genevieve Nelson.

Defendant itemizes various supposed errors or examples of poor lawyering, most of which are presented out of context or inaccurately. In any event, a point by point rebuttal is unnecessary. As the Court is well aware, it is not unusual for a presiding judge to issue the occasional sharp comment during trial. The Court is best positioned to evaluate Marinelli's performance prior to and during the trial. Towards that end, the trial record as a whole, as well as the ultimate result, speaks to counsel's effectiveness and the merits of the fee application.

Finally, defendant suggests that Magistrate Judge Vera M. Scanlon had recommended that Marinelli's hourly rate should be set at $250. (Def. Brief at 14). This bit of sophistry distorts Magistrate Judge Scanlon's reasoning in *Thomas v. City of New York*, 14 CV 7513 (ENV) (VMS). As Michael Lumer, lead counsel in *Thomas*, explains, he had reached an agreement to pay Marinelli a flat fee for defending certain depositions and thus, in the context of a fee motion following an accepted Offer of Judgment, asked that those flat fees be awarded to the plaintiffs. Magistrate Judge Scanlon determined that given the discrete nature of the task, these fees would be awarded. In relevant part, she noted that the flat fee happened to work out to $250 an hour, which was well within a reasonable range for attorneys of Marinelli's experience and skill. The point here is that the court did not find $250 appropriate, but rather well below the ceiling that would apply Marinelli. Lumer Decl.

Lozar's Hourly Rate

Lozar contests Defendant's limited challenges to his hourly rate.  First, Defendant attacks that Lozar has shown that clients have actually paid him this rate by citing Lozar's reference to billing clients $510 an hour in 2009 while working for a large firm.  Defendant's focus on this isolated fact fails to address that Lozar already accounted for it (his rate is more than twenty percent lower nearing ten years later).  More importantly, Defendant's

focus on this single fact fails to address the other supporting evidence for the rate that Lozar provided, which includes the fact that Corporation Counsel paid him this rate without objection in late 2017 in the Eastern District, that the Southern District awarded him this rate without reduction in a lengthy Memorandum and Order assessing <u>Arbor Hill</u> factors in 2017 in a Section 1983 case; that private clients have paid Lozar this amount; and more.  <u>See</u> <u>Docket No. 84</u>.

Defendant's argument regarding the reasonableness of Lozar's rate is similarly incomplete in its suggestion that Lozar should be compensated as though he were a recent law-school graduate because Lozar founded his solo civil rights practice in 2015. Defendant's argument leaves unrebutted those aspects of Lozar's declaration presenting the Court with evidence of Lozar's work experience as a prosecutor, open-government lawyer, federal-court clerk, and more.  Lozar's declaration explains how the fact and nature of those work experiences contributed to Lozar's substantive and procedural effectiveness as a civil rights litigator.  In light of Defendant leaving that evidence and argument unrebutted, Lozar asks the Court to find that Lozar's rate is reasonable in the open marketplace in light of his professional experience paired with his significant experience with Section 1983 litigation.

Next, Defendant argues that the Court should view Lozar as Mr. Marinelli's "junior associate."  In Lozar's General Declaration, he testified that although he normally litigates as a solo practitioner, which this Court's dockets confirm, he entered into an of-counsel agreement with Mr. Marinelli in this case to provide legal services as needed.  Docket No. 84-1.  As supported by Lozar's General Declaration and billing records, the of-counsel provision of legal services was substantive in nature (depositions, summary judgment, targeted research) and with having met Ms. Cooper and with an understanding of the facts of the case.

With respect to this last point:  Lozar's understanding of the facts of the case.  A comparison of his contemporaneous and actually billed time sheets show that while Lozar spent significant time learning and developing the factual record in the case, Lozar limited the hours for which he sought fees in order to avoid alleged redundancies with Mr. Marinelli's work.  Compare Docket No. 83-4, with Docket No. 83-6.  Naturally, Defendant responded with an effective argument that Lozar himself is redundant.  Lozar respectfully refers the Court to his contemporaneous and submitted billing records as evidence that he has acted in very good faith here to responsibly provide needed legal services unique to his skills without redundant billing.

B.    Munar's Hourly Rate

Defendant's attacks on Drei Munar's hourly rate is as factually suspect as his claims concerning Marinelli, if not more so. For example, defendant asserts that Munar has appeared in only two civil rights cases, citing plaintiff's moving brief at pages 10-11 and Munar's declaration. (Def. Brief at 14). In fact, neither source supports defendant's statement.

10

As these submissions indicate, and as further reflected in The Eastern and Southern District's Pacer system, contrary to defendant's unsupported assertion, Munar is the attorney of record in ten civil rights cases in the Eastern District of New York and eight more in the Southern District. See, Exhibit 7. Moreover, Ms. Munar has participated in approximately 25 depositions, in ten separate cases, each with Corporation Counsel as the opposing party.  Marinelli Reply Dec ¶ 11-12.

Defendant's attempt to minimize Munar's experience in the face of incontrovertible evidence to the contrary is incomprehensible. In any event, whether it is the product of inattention or has a more deliberate origin is unimportant. The salient point for the purpose of this motion is that Munar is quite experienced and skilled relative to other attorneys with her years of practice. Moreover, as the Court observed, Munar played an integral role at plaintiff's trial, displaying poise and knowledge greater than the average comparable associate. Munar's requested rate of $325 is appropriate and should be awarded.

Even if the Court were to consider this figure overly high for the Eastern District, plaintiff would suggest that the Court take note of a recent recommendation in this district that a first-year associate, who was admitted to the bar in 2016, be awarded an hourly rate of $200. *Thomas v. City of New York*, 2017 WL 6033532, at *5 (E.D.N.Y. Dec. 1, 2017). Defendant's suggested rate of $170 is, frankly, insulting. Munar is far more experienced that the attorney in *Thomas*, and is deserving of a rate on the upper end of the range for a four-year associate.

POINT IV

THE AMOUNT OF TIME EXPENDED WAS REASONABLE
AND NECESSARY AND SHOULD BE FULLY AWARDED

Defendant seek to exclude a large portion of plaintiff's attorneys' fees under the argument that the hours billed are excessive, redundant or relate to unsuccessful claims. These arguments lack merit, and certain assertions are factually unsupported, misleading or simply wrong.

A.   <u>The False Arrest Litigation</u>

Defendant contends that plaintiff should not recover for time spent by Marinelli and other counsel for plaintiff prosecuting plaintiff's false arrest claim. He further argues that plaintiff is not entitled for time spent by plaintiff's attorneys opposing defendant's unsuccessful motion for summary judgment for the false arrest claim and on the motions in *limine*.  However, the time spent was necessary and appropriate and was properly billed. (See Point II, supra).

B.   <u>Marinelli Is Not Billing For Defending Plaintiff in the Criminal Action</u>

Defendant speculates that Marinelli has billed 7.1 hours  between April 24, 2013, and July 2, 2014, "for what appears to his defense of plaintiff in the underlying criminal matter." There is no good faith basis for defendant to make this claim and it is factually false. While it is true that Marinelli represented plaintiff in her criminal matter, he did not bill defendant for this representation. For example, Marinelli did not bill for time spent making numerous criminal court appearances, reviewing discovery, or discussing the matter with the Assistant District Attorney.  The submitted timesheets include only time spent prosecuting the instant civil case.

C   <u>Plaintiff's Counsel Did Not Duplicate Efforts</u>

Defendant asserts that plaintiff's attorneys improperly duplicated efforts when two attorneys prepared for, and participated in the deposition of defendant. This argument is without merit.  See N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983) ("[P]revailing parties are not barred as a matter of law from receiving fees for sending a second attorney to depositions . . . ."); Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) (It was "entirely appropriate" for two attorneys to attend the depositions of key witnesses). Hargroves v. City of New York, 2014 U.S. Dist. Lexis 42534 (same) The mere involvement of two attorneys in preparing for and conducting a deposition is not a ground for limiting or precluding recovery for that time.

D. Marinelli's Hours Are Not Excessive

As shown below, the hours Marinelli spent litigating this matter were appropriate and defendant's arguments to the contrary are often either incorrect or misleading.

i.   Time Reviewing the Depositions

Defendant argues that since there were only three depositions, totaling 186 pages, that the 49.5 hours Marinelli spends reviewing these transcripts is excessive. This argument is, to be polite, highly misleading. Defendant fails to mention that these hours were spread out over the approximately two years between the taking of the depositions and the commencement of trial. More importantly, defendant implies that Marinelli simply read and reread these transcripts without purpose. In actuality, these billing events reflect the many times Marinelli, appropriately, reviewed the transcripts for many different reasons; i.e., for accuracy, to prepare for other depositions, to evaluate other discovery, to prepare a response to defendant's motion for summary judgment, to prepare for trial, etc. In short, there is nothing surprising or untoward about the fact that Marinelli had to revisit these

13

transcripts time and again over a period of about two years in order to properly litigate other parts of discovery. That he ended up spending 9.5 hours reviewing these transcripts while engaging in discovery, dispositive motion practice, and trial preparation, is eminently reasonable and certainly not not excessive.

    ii. <u>Time Spent Reviewing Discovery, Etc.</u>

Defendant argues that Marinelli spent 67.6 hours "reviewing discovery, deposition transcripts and preparing a deficiency letter to defendants." (Def. Brief at 19). This total, defendant claims, is excessive. What defendant neglects to mention is that this total includes the very same 49.5 hours defendant had separately complained Marinelli had billed for reviewing transcripts. (Defs. Brief at 18).

Hence, defendant has argued that plaintiff is seeking to recover for 49.5 hours for transcript review, and another 67.6 for reviewing discovery materials.. The obvious implication is that Marinelli billed for 117.1 hours for these two categories of tasks. However, as defendants surely understood, plaintiff is seeking a total of 67.6 for this time. That it takes several passes through defendant's brief, with constant references to Marinelli's time records to catch defendant's double-counting, is concerning.

The simple fact remains, however, that 67.6 hours to review transcripts, conduct discovery, prepare a deficiency letter, and so forth, over the lifetime of a civil case is reasonable on its face. This is particularly true when one considers that this number also includes time spent reviewing discovery in order to oppose defendant's summary judgment motion and prepare for trial, As a side matter, defendant wrongly claims that Marinelli did not serve defendants with a letter detailing certain deficiencies in discovery. In actuality,

this deficiency letter was provided to defendant both by email and hand on October 1, 2015. See, Exhibit 6.

### iii.    Preparation of Plaintiff's Joint Jury Instructions

Defendant's claim that Marinelli billed 21 hours preparing plaintiff's proposed jury charge is untrue. On September 15, 2017, Marinelli's spent 4.2 hours researching both plaintiff's and defendant's proposed jury charge, and5.2 hours drafting plaintiff's charge, for a total of 9.4 hours.[6]  No additional hours were billed for this task. The defendant states that 10.5 hours should be permitted for preparing the charge. Accordingly, defendant cannot complain about the 9.4 hours Marinelli expended.

### iv.    Preparation For Kosterkin's Testimony and Trial in General

Defendant falsely claims that Marinelli spent 7.5 hours "preparing Kosterkin for trial." While Marinelli did spend 5.1 hours preparing Kosterkin's direct examination, he spent only 2.4 hours personally prepping Kosterkin to testify. See, Marinelli Decl., Ex 2, at p. 5 (10/1/17). In any event, it would not have been inappropriate or excessive if Marinelli had spent 7.5 hours entirely on prepping the witness. These expenditures of time are well within the bounds of reasonableness.

Finally, the 29.2 hours Marinelli's spent preparing for trial, which includes the 7.5 hours related to Kosterkin's testimony, , and 20.9 additional hours preparing the instant fee motion are well within a reasonable range.[7]

### v.    Travel Time

---

[6] This 9.4 hours includes time spent reviewing defendant's charge as well as plaintiff's proposed charge.

[7] As explained below, the claim that Marinelli refused to negotiate a fee settlement is false.

The defendant correctly notes that travel time is usually compensated at 50 percent but fail to acknowledge that Marinelli had already adjusted his billing accordingly. More precisely, Marinelli halved his hourly rate for his travel time, as reflected in the timesheet submitted to the Court, showing his hourly rate for travel time as $213.

      E.     <u>Munar's Hours Are not Excessive</u>

Like Marinelli, Munar's hours are supported by her contemporaneous time records. The defendant offers no good reason for a reduction and they should be awarded in full. For instance, defendant's assertion that the 7.1 hours Munar spent preparing the JPTO should be reduced to the 1.9 hours Marinelli spent reviewing and revising the JPTO is offered without merit or reason. That it took Munar more time to compose the initial draft of JPTO than it did for the more experienced Marinelli to review it is rationale and reasonable. Indeed, it would be puzzling had the hours been reversed.

Similarly, the 4 hours spent by Munar preparing exhibits and the 17.2 hours she expended preparing for plaintiff's direct examination, are both well within a reasonable range and clearly not excessive.

POINT VI
PLAINTIFF ATTEMPTED TO NEGOTIATE A FEE SETTLEMENT

Contrary to defendant's assertions, plaintiff has made a good faith effort to resolve fees. Shortly after the jury rendered its verdict, plaintiff provided her attorneys' time records. Shortly thereafter, defendant informed plaintiff that plaintiff's time records were reviewed with a "fine-toothed comb" and complained that 1.) Certain entries were redundant and/or excessive; 2). Plaintiff's attorneys' rates were too high, and 3). Plaintiff achieved only limited success at trial. Defendant refused to make a settlement offer, but intimated that if defendant was to make such

an offer, it would be in the range of the $38,000 defendants assert appropriate in the instant motion.

On October 18, plaintiff, via email, requested; 1). Specific objections to plaintiff's records; 2). The hourly rates defendants deemed appropriate for plaintiff's attorneys, 3). That defendant point out entries they believe should be eliminated and 4). Identify instances where defendants believe excessive hours were billed. See, Exhibit 5.

Having not received an answer by October 20, and with entry of judgment against defendant imminent, plaintiff offered to consent to a stay if defendants were able to provide the requested information. Defendants responded that rather than go through a "line-by-line" review of the bill, defendant preferred motion practice. Id.

Plaintiff again asked for specific objections, and offered that if the city were to provide examples of the claimed abuses, plaintiff would then look for similar entries. Moreover, asked defendant to communicate what he believes to be the appropriate hourly attorney rates. Defendant did not reply. Id.

On January 21, 2018, defendant offered $45,000 to settle fees. In conveying this offer, defendant warned Marinelli that if it was rejected, a motion that would be highly critical of his trial performance would be submitted, and that such a motion would damage Marinelli's ability to get a proper rate in the future.

POINT VII
PLAINTIFF SHOULD BE COMPENSATED FOR THE INSTANT REPLY PAPERS

Plaintiff requests 35.4 hours in preparing the instant reply, 26 hours for Marinelli and 9.4 hours for Lozar. At counsels' requested rate, this translates to $11,050 for Marinelli and $3,760 for Lozar for a total of $13,810.

This expenditure of time, which plaintiff acknowledges is greater than what was spent on the opening papers, was necessitated by the nature and style of defendant's opposition. More specifically, defendant went well beyond the normal arguments about the reasonableness of the attorneys' rates and perhaps certain time entries, by insisting on hourly rates well below anything remotely reasonable, and grounding his arguments on a plethora of factual misstatements, misleading arguments, and incorrect legal claims.

Faced with this assault on plaintiff's attorneys' competency and professional value, counsel had little choice but to invest additional time rebutting defendant's arguments and clarifying the record. Much like in the litigation that preceded it, the defendant has insisted on a scorched earth approach to the dispute at hand, eschewing a reasonable compromise, and forcing plaintiff to expend far more hours than what would otherwise be necessary. The requested time is, however unfortunate, reasonable under the circumstances.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that this Court award a total of $193,070.25 as attorneys' fees and costs to plaintiff as requested in plaintiff's fee motion, as well as an additional $13,810 for time spent on this reply.

Dated  :  February 9, 2018
          New York, New York

                                    /s
                            ROBERT MARINELLI, ESQ.
                            305 Broadway, Suite 1001
                            New York, New York 10007
                            (212) 822-1427